```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

PAUL PAHL and AMANDA PAHL,        *

     Plaintiffs,                  *

vs.                               *    CASE NO. 4:08-CV-112 (CDL)

KING DAVID ROBINSON,              *

     Defendant.                   *
```

O R D E R

In this action, Plaintiffs seek to recover for injuries they suffered because Defendant hit Plaintiff Paul Pahl with his car. Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 35).[1] For the reasons set forth below, Defendant's Motion is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the summary judgment movant meets its burden, the burden shifts and the nonmoving party must produce evidence to show that there *is* a genuine issue of material

---

[1] Also pending before the Court is Defendant's Motion for Partial Summary Judgment as to Plaintiffs' claim for punitive damages (Doc. 58). That Motion is not yet ripe for review.

fact.  *Id.* at 324.  The nonmoving party must "go beyond the pleadings," *id.,* and point the Court to "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324.

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party, no genuine issues of material fact remain to be tried.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment.  *Anderson*, 477 U.S. at 247-48.  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for Plaintiffs—there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

## FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiffs reveals the following.

On January 14, 2008, Plaintiff Paul Pahl ("Pahl"), Paul Hanover, and Damien VanLangingham went for a bicycle ride together.  They started their ride at approximately 4:15 p.m., and they took a route

that ultimately led them to ride westbound on Georgia Highway 137 ("Ga. 137"). Pahl was familiar with the particular route because he had ridden it many times.

Pahl, an experienced cyclist, was familiar with the rules governing riding a bicycle on a public road, including the general rule that cyclists riding on public roads should stay as close as possible to the white line—also called the fog line—on the right side of the road so that vehicles approaching from the rear can pass. Pahl's bicycle was equipped with a seat post reflector, reflectors mounted on the spokes of the wheels, reflectors on the pedals, a rear facing strobe light, and reflective material under the seat. Pahl wore a reflective "PT" belt, a long sleeve shirt with reflective material on the sleeves, and a helmet.

When Pahl and his friends reached the Ga. 137 portion of their route, they rode in the direction of the setting sun. The sun was bright in Pahl's eyes and reduced his vision field, so Pahl was more cautious and alert than he would be in other situations. As they rode west on Ga. 137, the cyclists rode in a single file line with Pahl in the front, Hanover in the middle, and VanLangingham in the rear. They maintained a space of 15 to 30 feet between each bicycle. They generally rode inside the lane of travel but as close to the fog line as they could. At around 5:35 p.m., the cyclists were going 7 to 10 miles per hour.

At 5:35 p.m., Defendant was traveling west on Ga. 137 in his car. The setting sun was bright and got brighter as Defendant

3

continued west, but Defendant could see pretty well until the sun got "rough" a couple of minutes before the wreck occurred. As a result of the glare, Defendant lowered his sun visor and used his hand to shield his eyes from the glare. Defendant also slowed his vehicle.[2] Defendant focused on the center yellow line approximately two to three car lengths ahead of him to gauge his position in the lane. While concentrating on the center yellow line, Defendant could see "several feet" of the westbound lane of travel, but his vision of "the bulk of the travel lane" was obscured by the glare. (Robinson Aff. ¶ 4, Apr. 24, 2009.)

Defendant did not see the cyclists riding on Ga. 137. He struck VanLaningham. Hanover heard the impact and looked over his right shoulder while steering off the road and onto the shoulder. (*E.g.*, Hanover Dep. 68:18-21, 71:4-6, 74:9, July 25, 2008.) Pahl, who was riding on the fog line just before Defendant struck VanLaningham, also heard the impact, looked over his right shoulder and started veering to the right. (Pahl Dep. 119:19-120:14, Oct. 27, 2008.) Defendant struck Pahl with his car. According to Pahl, he was on or very close to the fog line at the time of impact. (*E.g., id.* at 121:10-13.) Hanover did not see Defendant hit Pahl, but when he looked forward after looking back to see what happened to

---

[2]There is a dispute as to how fast Defendant was traveling. Defendant estimated his speed to be 25 miles per hour, but there is also evidence that Robinson was going 35 miles per hour or more. (Collingsworth Dep. 21:20-22:15, Apr. 8, 2009 (estimating the "closing speed"—difference between the cyclists' speed and Defendant's speed—to be more than 25 miles per hour).)

VanLaningham, Hanover saw Pahl rolling over Defendant's hood in the roadway, three to five feet to the left of Hanover's position on the shoulder of the road.[3] Pahl landed in the center of the road. By all accounts, the time between the collisions was very short. None of the parties received a citation as a result of the collision.

## DISCUSSION

Defendant contends that he is entitled to summary judgment because there is insufficient evidence establishing that Defendant was negligent. Defendant also argues that even if the evidence did suggest that Defendant was negligent, the evidence shows that Pahl was contributorily negligent and that his contributory negligence was the sole cause of his injuries. Finally, Defendant contends that Pahl assumed the risk associated with operating his bicycle dangerously. These arguments are all based upon Defendant's theory that Pahl was riding his bicycle in the middle of the road, thus creating a hazardous condition. (Def.'s Br. in Supp. of Mot. for Summ. J. 8, 13, 18.) Defendant suggests that if Pahl had been riding his bicycle on or near the fog line when Defendant struck him, there would be a jury question as to whether Defendant exercised ordinary

---

[3] Defendant contends that Hanover's testimony unequivocally establishes that Pahl was three to five feet inside the westbound lane of travel when Defendant hit Pahl. It does not. Hanover testified that he was on the shoulder *to the right of the fog line* when he saw Pahl rolling across Defendant's hood, so the evidence simply establishes that Pahl was rolling over the hood three to five feet to the left of Hanover's position on the shoulder. This evidence, as well as Pahl's testimony that he was on or very near the fog line at the time of impact, creates a jury question on the issue of whether Pahl was riding in the middle of the travel lane or close to the fog line.

care in the operation of his car and caused the wreck, whether Pahl was negligent, and whether Pahl assumed any risk. (*Id.* at 10-11, 14-15, 19.)  As discussed above, the evidence viewed in the light most favorable to Plaintiffs shows that Pahl was operating his bicycle on or near the fog line immediately prior to the collision—not in the middle of the road.  For these reasons, the Court finds that genuine issues of material fact exist on the questions whether Defendant was negligent and caused the collision, whether Pahl was contributorily negligent, and whether Pahl assumed any risk that caused his injuries.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. 35) is denied.

IT IS SO ORDERED, this 11th day of June, 2009.

S/Clay D. Land  
CLAY D. LAND  
UNITED STATES DISTRICT JUDGE
